MARK E. MILLER (S.B. #130200) – markmiller@omm.com
MICHAEL SAPOZNIKOW (S.B. #242640) – msapoznikow@omm.com
ALEXANDER B. PARKER (S.B. #264705) – aparker@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Plaintiff
DCG SYSTEMS, INC.

JOHN V. PICONE III (S.B. #187226) – jpicone@hopkinscarley.com
GARY H. RITCHEY (S.B. #136209) – gritchey@hopkinscarely.com
JENNIFER S. COLEMAN (S.B. #213210) – jcoleman@hopkinscaley.com
HOPKINS & CARLEY A LAW CORPORATION
The Letitia Building
70 South First Street
San Jose, CA 95113

Mailing address:
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendant
CHECKPOINT TECHNOLOGIES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DCG SYSTEMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CHECKPOINT TECHNOLOGIES, LLC,<br><br>Defendant. | Case No. 5:11-cv-03792-PSG<br><br>**JOINT CASE MANAGEMENT STATEMENT and [PROPOSED] ORDER**<br><br>Date: November 1, 2011<br>Time: 2:00 PM<br>Place: Courtroom 5 |

Pursuant to the Court's Order dated August 19, 2011 (Dkt. 14), Plaintiff DCG Systems, Inc. ("DCG") and Defendant Checkpoint Technologies, LLC ("Checkpoint") submit this Joint Case Management Statement and [Proposed] Order.

**1. Jurisdiction and Service:**

This is an action for patent infringement arising under the patent laws of the United States of America (Title 35 of the United States Code) and the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b). All parties have appeared.

**2. Facts:**

DCG asserts that Checkpoint infringes seven patents assigned to DCG: United States Patent Nos. 7,224,828, titled Time Resolved Non-Invasive Diagnostics System; 7,227,702, titled Bi-Convex Solid Immersion Lens; 7,466,852, titled Time Resolved Non-Invasive Diagnostics Systems; 7,492,529, titled Bi-Convex Solid Immersion Lens; 7,639,025, titled Collection Optics Integrating an Objective and a SIL; 7,733,100, titled System and Method for Modulation Mapping; and 7,990,167, titled System and Method for Modulation Mapping (collectively, the "Asserted Patents"). The Asserted Patents relate to technologies used to analyze and test integrated circuits and other electronic components. Checkpoint sells devices that are used to analyze and test integrated circuits and other electronic components. DCG filed its complaint for infringement of the Asserted Patents on August 2, 2011. Checkpoint answered on October 7, 2011, asserting that it does not infringe any valid claim of the Asserted Patents and including counterclaims for declaratory judgment of non-infringement and invalidity of the asserted patents.

**3. Legal Issues:**

The key legal issues concern the following subjects:

a. Whether Checkpoint has infringed and continues to infringe the Asserted Patents;

b. Whether the asserted claims of the Asserted Patents are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the U.S. Code; and

c. Whether either party is entitled to the relief specified in Section 11.

**4. Motions:**

No motions are currently pending or anticipated.

**5. Amendment of Pleadings:**

The parties agree that the deadline for amending pleadings to add parties, claims, or counterclaims be set for February 29, 2012, except in the event of newly discovered non-public information, which was not discovered by that date despite diligent efforts to take discovery.

**6. Evidence Preservation:**

The parties have taken appropriate and reasonable measures to preserve relevant evidence.

**7. Disclosures:**

The parties will exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A) on November 4, 2011.

**8. Discovery:**

DCG anticipates pursuing discovery on DCG's cause of action for patent infringement, including but not limited to the following topics: (i) the technical details of the Accused Products; (ii) the number of Accused Products manufactured, sold, offered for sale, and/or leased and the corresponding revenue; (iii) Checkpoint's defenses including invalidity and non-infringement of the Asserted Patents; (iv) Checkpoint's interactions and communications with other entities relating to the Accused Products or the Asserted Patents; (v) Checkpoint's financial information relating to the Accused Products; (vi) Checkpoint's marketing of the Accused Products; and (vii) patent licenses to which Checkpoint is a party and Checkpoint's policies regarding patent licensing.

Checkpoint anticipates pursuing discovery on DCG's causes of action and Checkpoint's counterclaims, including: (i) DCG's claims of invention; (ii) DCG's representations concerning the Asserted Patents and prior art; (iii) DCG's efforts to enforce any patent rights; (iv) the validity and enforceability of the Asserted Patents; and (v) DCG's claim of damages.

**A. Limits on Discovery:**

The parties agree that each party shall be permitted to take up to eighty (80) hours of fact

depositions. Included within these limits are depositions of the parties pursuant to Rule 30(b)(6) and of third parties, but expert depositions are not included within these limits. The 10 deposition limit of Rule 30(a)(2)(A)(i) shall not apply.

With respect to Rule 30(b)(6), any party may be served with separate deposition notices covering different topics at different times, but a party shall not be required to designate a corporate representative regarding the same topic more than once.

The parties agree that each party may serve up to 35 interrogatories. The parties agree that there shall be no limit on requests for admission related to the authentication of documents. And the parties agree that each party be permitted to serve 75 requests for admission relating to substantive issues, and to meet and confer should a party desire additional such requests.

**B. Production of ESI:**

The parties agree to use commercially reasonable efforts to produce documents electronically. The parties further agree that spreadsheets, source code, executable files, RTL, HDL, netlists, chip or board layout files, videos, animations, audio files, and presentations that include video, animation, or audio shall be produced where practical in native format. To the extent that documents produced in native format cannot be rendered or viewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the review of such documents, including issues as may arise with respect to obtaining access to any such software or operating manuals.

Electronically Stored Information (ESI) not produced in native format and amenable to being imaged will be produced as images on optical disks (i.e., CDs or DVDs) or external hard drives accompanied by load files. Each image will bear a unique production number and any applicable confidentiality language pursuant to the Protective Order used in this litigation. ESI produced in this manner will be accompanied by load files with searchable text (including electronically extracted text or, if electronically extracted text is unavailable, OCR text), and where practical and without materially enhancing the cost of production:

- Unitization (including the production number of the first and last page of each document),

- Attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments),
- Confidentiality (including any designation pursuant to the Protective Order),
- Source information (the identity of the custodian, or, if none, a generalized location)
- System metadata (including author, file name, file path, file size, file type, date created, date modified, title, sender ("from"), primary recipient ("to"), courtesy copy ("cc"), blind courtesy copy ("bcc"), subject, message size, sent time/date, received time/date, last modification time, importance, read status, and flag status)

Paper documents amenable to being imaged will be produced as images on optical disks (i.e., CDs or DVDs) or external hard drives accompanied by load files. Paper documents may be produced in black-and-white or color, but if a producing party intends to rely in any brief or hearing on an aspect of a document that requires review in color, the party shall produce that document in color. Each image will bear a unique production number and any applicable confidentiality language pursuant to the Protective Order used in this litigation. Paper documents produced in this manner will be accompanied by load files with searchable text and, where practical and without materially enhancing the cost of production, source information (the identity of the custodian, or, if none, a generalized location). If a party desires additional information about a particular paper document produced in this form the parties will meet and confer regarding the appropriate means to supply the additional information.

If a party identifies responsive documents or information in a form that cannot reasonably be imaged and that does not fall within the categories to be produced in native format, that party shall inform the requesting party of the existence of such records. The parties shall then meet and confer regarding the appropriate means for producing or permitting inspection of such records.

If a party learns of responsive documents or information that are not reasonably accessible (such as magnetic tape archives), or if a party learns facts that cause the party to suspect that responsive documents or information are present in a location or form that is not reasonably accessible, that party shall inform the requesting party of the existence of such records or of the reasons for its suspicions that such records may exist. The parties shall then meet and confer

regarding the appropriateness of producing or permitting inspection of such records, and of any appropriate cost sharing.

**C. Electronic Discovery Model Order:**

Checkpoint proposes that electronic discovery be further governed and limited by the Model Order proposed on September 27, 2011, by Chief Judge Rader of the Federal Circuit at his speech on "The State of the Patent Litigation" before the E.D. Texas Judicial Conference, attached hereto as Exhibit A. In an attempt to accommodate DCG's concerns, Checkpoint has modified the Model Order by: 1) including the production of metadata as defined above; 2) increasing the number of email custodians from five (5) to ten (10); 3) increasing the number of total search terms per custodian per party from five (5) to twenty (20); and 4) allowing for a second round of requests within sixty (60) days after a party's receipt of responsive documents from initial email requests – this second round of requests is limited to five (5) custodians and five (5) search terms per custodian per party, but allows the second round of requests to be directed to custodians from whom documents may have already been requested. Exhibit B hereto. It is this modified order that Checkpoint proposes the Court adopt.

DCG contends that the Model Order is not appropriate for this action. The Federal Rules of Civil Procedure have been adopted to address current discovery issues and are adequate for this case without any need to adopt the Model Order. DCG believes that Judge Rader's Model Order addresses issues that arise in patent infringement actions brought by non-practicing entities where there are large imbalances in the cost and volume of discovery. (*See* Judge Rader's speech, Exhibit A pages 1-20.) This action presents different facts and different issues. DCG and Checkpoint are competitors. That fact introduces issues in this case that are not contemplated by the Model Order. For example, whether Checkpoint copied DCG's products will be the subject of discovery in this case. And whether DCG is entitled to an injunction and the facts that relate to that question will also be an issue in this case. Those issues require DCG to be able to seek documents relating to a particular subject without first knowing the keywords that Checkpoint uses when discussing the subject.

Checkpoint's proposed modifications — basically, increases in the numbers of custodians

and search terms permitted to the parties — do not address the fundamental incompatibility of the Model Order to this case. For example, even with Checkpoint's proposed changes, the parties would still be required to identify custodians and search terms for email searches before obtaining the discovery necessary to determine what custodians and what search terms may be relevant. Suppose that Checkpoint uses a nickname or codeword to identify DCG in Checkpoint's internal communications. DCG would be unable to obtain discovery of those communications without knowledge of the nickname or codeword under the Model Order; under the Federal Rules, however, DCG could request production of documents relating to DCG which would cause the communications to be produced.

DCG is open to discussing some of the elements of the Model Order, including the use of Rule 34 requests for production that are limited to email and the appropriate timing of email searches within the case schedule. But DCG does not consent to Checkpoint’s proposal that the Model Order be adopted in its entirety, with limited modifications.

**9. Class Actions:**

This matter is not a class action.

**10. Related Cases:**

There are no related cases or proceedings.

**11. Relief:**

DCG seeks: (1) a judgment that Checkpoint has directly infringed each of the Asserted Patents, contributorily infringed each of the Asserted Patents, and/or induced infringement of each of the Asserted Patents; (2) a judgment that Checkpoint willfully infringed each of the Asserted Patents; (3) a permanent injunction enjoining Checkpoint and all persons acting in concert with Checkpoint from further infringing the Asserted Patents; (4) damages based on Checkpoint’s infringement of the Asserted Patents, enhanced by reason of Checkpoint’s willful infringement; (5) prejudgment interest on all damages awarded; (6) a declaration that this is an exceptional case under 35 U.S.C § 285 and an award to DCG for its attorneys’ fees in this action; (7) an award to DCG for the costs of this suit; and (8) such other and further relief as deemed just and equitable by the court.

Checkpoint seeks: (1) that DCG takes nothing by its Complaint; (2) that DCG's Complaint be dismissed with prejudice; (3) that the Court enter a declaration that Checkpoint's accused methods, products, and services do not infringe and have not infringed, directly or indirectly, any valid claim of the Asserted Patents; (4) that the Court declare that one or more claims of the Asserted Patents are invalid; (5) that this case be declared exceptional and Checkpoint be awarded its costs, expenses and reasonable attorney's fees in this action pursuant to 35 U.S.C. § 285; and (6) that Checkpoint be awarded such other and further relief as the Court may deem appropriate.

**12. Settlement and ADR:**

The parties have agreed to private mediation with San Francisco JAMS or another mediator agreeable to both parties within 45 days following the Court's issuance of the claim construction order with the corresponding report under ADR L.R. 6-14 due within 15 days after the mediation.

**13. Consent to Magistrate Judge for all Purposes:**

The parties consent to proceed before United States Magistrate Judge Paul S. Grewal.

**14. Other References:**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues:**

The parties are not aware of any issues that can be narrowed by agreement or by motion at this time. The parties believe that discovery is not mature enough and trial is too remote at this time to determine issues that can be narrowed, suggestions to expedite the presentation of evidence at trial, or whether bifurcation of issues, claims or defenses is appropriate. The parties intend to address these issues as discovery proceeds and the issues become clearer.

**16. Expedited Schedule:**

Consistent with the Patent Local Rules, the parties propose the schedule listed in Section 17. Wherever possible, the parties would like to explore the possibility of handling the case on an expedited basis to help resolve this matter in a timely and cost-efficient manner.

**17. Scheduling:**

The parties propose the following schedule.

| **Event** | **Proposed Date** |
|---|---|
| Deadline to comply with Civil L.R. 16-8 and ADR L.R. 3-5 | October 25, 2011 |
| Initial Case Management Conference | November 1, 2011 |
| DCG's disclosure of asserted claims and infringement contentions (Patent L.R. 3-1) and related document production (Patent L.R. 3-2). | November 4, 2011 |
| Rule 26(a)(1)(A) initial disclosures | November 4, 2011 |
| Checkpoint's invalidity contentions (Patent L.R. 3-3) and related document production (Patent L.R. 3-4) | December 19, 2011 |
| Exchange of proposed terms and claim elements for construction (Patent L.R. 4-1(a)) | January 5, 2012 |
| Exchange of preliminary proposed claim construction and extrinsic evidence (Patent L.R. 4-2) and initial disclosure of claim construction expert identities and résumés | January 26, 2012 |
| Joint claim construction statement (Patent L.R. 4-3) – limited to 10 terms unless leave of court granted. | February 16, 2012 |
| Deadline to amend pleadings other than amendments addressed in Section 5, above.<br><br>Deadline to serve initial privilege logs | February 29, 2012 |
| Completion of Claim Construction Discovery Other Than Expert Depositions (Patent L.R. 4-4) | March 16, 2012 |
| DCG's opening claim construction brief (Patent L.R. 4-5(a)) and any expert declaration in support | March 20, 2012 |
| Checkpoint's opposing claim construction Brief, (Patent L.R. 4-5(b)) and any expert declaration in support | April 17, 2012 |
| DCG's reply claim construction brief (Patent L.R. 4-5(c)). | May 10, 2012 |
| Technology Tutorial | May 22, 2012 or other such day that is convenient for the Court |
| Claim Construction Hearing | May 29, 2012 or other such day that is convenient for the Court |
| Deadline to serve initial privilege logs | February 29, 2012 |
| Advice of counsel disclosure | 50 days after claim const. ruling |
| Close of fact discovery | September 27, 2012 or 75 days after claim const. ruling, whichever is later |

| Event | Proposed Date |
| --- | --- |
| Deadline to file discovery motions relating to fact discovery | 7 days after close of fact discovery |
| Designation of opening experts with reports | October 18, 2012 or 95 days after claim const. ruling, whichever is later |
| Designation of rebuttal experts with reports | November 15, 2012 or 125 days after claim const. ruling, whichever is later |
| Designation of reply experts with reports | December 13, 2012 or 150 days after claim const. ruling, whichever is later |
| Close of expert discovery | January 31, 2013 or 200 days after claim const. ruling, whichever is later |
| Deadline to file discovery motions relating to expert discovery | 7 days after close of expert discovery |
| Last day to file dispositive motions | March 7, 2013 or 230 days after the claim const. ruling, whichever is later |
| Last day to file oppositions to dispositive motions | April 4, 2013 or 28 days after the last day to file dispositive motions, whichever is later |
| Last day to file replies to dispositive motions | April 18, 2013 or 42 days after the last day to file dispositive motions, whichever is later |
| Dispositive motion hearing | May 7, 2013 or other such day that is convenient for the Court |
| Pre-trial disclosures (Fed. R. Civ. P. 26(a)(3)(B)) | August 9, 2013, or 30 days before trial |
| Pre-trial objections (Fed. R. Civ. P. 26(a)(3)(B)) | August 23, 2013 or 14 days after Pre-trial disclosures |
| Final pre-trial conference | August 27, 2013 or other such day that is convenient for the Court |
| Trial | September 9, 2013 or other such day that is convenient for the Court |

**18. Trial:**

The parties anticipate that trial of this case will take approximately 7 days. At this time, the parties do not believe that it is feasible or desirable to bifurcate issues for trial. The parties have both requested a trial by jury for all issues so triable.

**19. Disclosure of Non-party Interested Entities or Persons:**

DCG filed its Certification of Interested Entities under seal on August 2, 2011. DCG

publicly reported that the following entities have ownership interests in DCG: Advanced Circuit Engineers, LLC; Associated Commercial Enterprises LTD; the Galil Foundation; NHN Investment Corporation; HO Schwartz & Associates Inc.; and Spirox Cayman Corporation. Because DCG filed its Certification under seal, certain information was redacted in the public disclosure. The redacted information has not been reproduced here.

Checkpoint filed its Certification of Interested Entities on October 7, 2011. Checkpoint reported that Mr. Horst Groneberg and Mr. Guoqing Xiao have ownership interests in Checkpoint.

**20. Other Matters:**

**A. Electronic Service**

The parties agree that service by electronic means shall be allowed as set forth in Fed. R. Civ. P. 5(b)(2)(E). Service by electronic means shall be considered the same as hand delivery for purposes of calculating the time to respond, provided service is made using the email(s) listed below, which may be supplemented or changed by written notice. The parties agree to include the case name in the subject line for documents served by electronic means. The parties further agree to serve documents not filed with the Court on or before 6 PM Pacific time, including discovery-related materials and expert reports.

Service on DCG shall be made to #DCG3792-service@omm.com.

Service on Checkpoint shall be made to Checkpoint004-service@hopkinscarley.com.

The parties agree that no person who is restricted from receiving any materials designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or CONFIDENTIAL pursuant to the Protective Order in this matter shall have access to any of these email accounts.

**B. Privilege Logs**

The parties agree to serve privilege logs on or before the date set in the schedule above. The parties further agree that communications between the parties and their counsel on or after August 2, 2011 (the filing date of the Complaint in this action) need not be included in the parties' privilege logs.

**C. Expert Discovery**

Consistent with Fed. R. Civ. P. 26(b)(4), no party shall be entitled to discovery of drafts of expert reports, which shall be deemed work-product privileged, and no party shall be entitled to discovery of communications between counsel and expert witnesses unless the expert relies on such communications pursuant to Rules 26(b)(4)(C)(ii) and (iii). The parties agree that expert communications and drafts that are not discoverable need not be included in the parties' privilege logs. At the close of expert discovery, the parties agree to provide: a listing of the total payment made to each expert up to that date, including a listing of each expert's hourly rate or rates up to that date; and, for any expert that may be used as a witness at trial, an updated listing of that expert's total payment and rate or rates at the commencement of trial.

**D. Sealed Materials**

The parties agree that materials to be filed under seal shall be served in a manner consistent with the email service protocol above on the same day as the electronic filing of any document with which they are associated. The parties further agree that documents filed with the Court under seal in a manner consistent with LR 79-5 on the next business day after the electronic filing of the documents with which they are associated shall be treated as though they had been filed concurrently with the electronically filed documents.

**E. Service of Findings of Fact and Discovery Requests**

The parties agree that they will provide electronic, editable copies of all written discovery requests and all proposed findings of fact to which responses are required or expected.

**ADDITIONAL INFORMATION PURSUANT TO PATENT LOCAL RULE 2-1**

**A. Proposed modifications to the obligations or deadlines set forth in the Patent Local Rules.**

The parties' proposed schedule is set forth in Section 17 above.

**B. The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing.**

The parties believe that determination of the order of presentation and estimated length of the Claim Construction Hearing would be premature at this time, and would leave to the Court's

discretion whether a Claim Construction Prehearing Conference is necessary or appropriate in this case.

**C. The scope and timing of any claim construction discovery**

The parties propose initial disclosure of claim construction expert identities and résumés on January 26, 2012, and further propose allowing expert discovery following each of the opening claim construction brief and the opposing claim construction brief.

**D. How the parties intend to educate the Court on the technology at issue.**

The parties propose educating the Court on the technology at issue through a tutorial on a date preceding the Claim Construction Hearing, as set forth in the above proposed schedule.

Dated: October 25, 2011

MARK E. MILLER
MICHAEL SAPOZNIKOW
ALEXANDER B. PARKER
O'MELVENY & MYERS LLP

By: */s/ Mark E. Miller*
Mark E. Miller

Attorneys for Plaintiff
DCG SYSTEMS, INC.

Dated: October 25, 2011

HOPKINS & CARLEY
A LAW CORPORATION

By: */s/ John V. Picone, III*
John V. Picone, III
Gary H. Ritchey
HOPKINS & CARLETY, a Law Corporation
70 South First Street
San Jose, CA 95113
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Defendant
CHECKPOINT TECHNOLOGIES, LLC

**FILER'S ATTESTATION**

Pursuant to General Order No. 45, Section X(B) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Mark E. Miller and John V. Picone, III.

Dated: October 25, 2011

By: */s/ Michael Sapoznikow*
Michael Sapoznikow

Counsel for Plaintiff
DCG SYSTEMS, INC.

**[PROPOSED] CASE MANAGEMENT ORDER**

The Case Management Statement and [Proposed Order] is hereby adopted by the Court as the Case Management Order for the case.

IT IS SO ORDERED

Dated: ____________________, 2011

_______________________________________
The Honorable Paul S. Grewal
United States Magistrate Judge