UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DCG SYSTEMS, INC., <br><br>　　　　Plaintiff, <br>　v. <br><br>CHECKPOINT TECHNOLOGIES, LLC, <br><br>　　　　Defendant. | Case No.: C-11-03792 PSG <br><br>**ORDER RE PARTIES' PRODUCTION OF ELECTRONIC DOCUMENTS** <br><br>**(Re: Docket No. 25)** |

　　　　In this patent infringement suit, the parties dispute the wisdom of proposed limits on the timing and scope of email discovery. Defendant Checkpoint Technologies, LLC ("Checkpoint") seeks an order adopting a version of the Model Order on E-Discovery in Patent Cases ("Model Order") recently promulgated by a subcommittee of the Advisory Council of the Federal Circuit.[1] Plaintiff DCG Systems, Inc. ("DCG") opposes adoption, urging that the court instead impose any limits on email discovery under the applicable provisions of Federal Rules of Civil Procedure 26 and 34. Because the court agrees that implementing a version of the Model Order in this case makes sense, Checkpoint's motion is GRANTED, as detailed below and set forth by separate order.

---

　　[1]　　The Advisory Council approved the Model Order by a unanimous vote.

Case No. C 11-3792 PSG
ORDER RE PARTIES' PRODUCTION OF ELECTRONIC DOCUMENTS　　　　　　　　　　1

As an initial matter, the court compliments both Checkpoint and DCG for their presentation of the issues underlying this dispute. In accordance with Fed. R. Civ. P. 16 and 26(f) and the Standing Order of the undersigned, the parties submitted a Joint Case Management Statement in advance of a Case Management Conference. Rather than present all-too-common boilerplate merely pledging to cooperate on production of Electronically Stored Information ("ESI"), the parties included a detailed protocol addressing many (even if not all) of the ESI issues that often plague complex (and especially patent) cases, including document format, unitization, confidentiality, source information, and system metadata. The parties also address production of paper documents and the obligation to identify responsive documents or information that are not reasonably accessible. This is an excellent example of how parties should work to address production problems proactively, rather than waiting until the eruption of a dispute and then filing extensive motions and declarations.

Where Checkpoint and DCG could not agree was on the subject of the Model Order. Citing the inherent power of trial courts to control their dockets to further "economy of time and effort for itself, for counsel and for litigants,"[2] and the disproportionately high expense of discovery in patent cases, the Model Order conceives of electronic document production in patent cases as a two-stage process. In the first stage, the parties exchange "core documentation" concerning the patent, the accused product, the prior art, and finances. In the second stage, the parties may request production of email. Critically, the email production requests must focus on particular issues for which that type of discovery is warranted. The requesting party must further limit each request to a total of five search terms and the responsive documents must come from only a defined set of five custodians. These restrictions are designed to address the imbalance of benefit and burden resulting from email production in most cases. As Chief Judge Rader noted in his recent address in Texas on the "The State of Patent Litigation" in which he unveiled the Model Order, "[g]enerally, the production burden of expansive e-requests outweighs their benefits. I saw one analysis that concluded that .0074% of the documents produced actually

---

[2] *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

Case No. C 11-3792 PSG
ORDER RE PARTIES' PRODUCTION OF ELECTRONIC DOCUMENTS           2

1  made their way onto the trial exhibit list-- less than one document in ten thousand.  And for all
2  the thousands of appeals  I've evaluated, email appears more rarely as relevant evidence."   The
3  Model Order concludes with provisions for cost shifting if discovery is requested beyond these
4  limits (or otherwise agreed to by the parties or ordered by the court upon a showing of a distinct
5  need) and for non-waiver if privileged or work-product protected ESI is inadvertently produced
6  (pursuant to Fed. R. Evid. 502(d)).

7       Checkpoint urges that the present case is as good as any in which the Model Order should
8  apply.  To the extent DCG has concerns about the five custodian and five search terms
9  constraints, Checkpoint stipulates to supplementation of each.  Checkpoint also offers to commit
10 to a production of certain metadata as a matter of right.

11      DCG's opposition to the Model Order focuses on the competitive posture of the parties in
12 this case.  Unlike those "actions brought by non-practicing entities where there are large
13 imbalances in the cost and volume of discovery," argues DCG, this case involves direct
14 competitors, and that "fact introduces issues in this case that are not contemplated by the Model
15 Order."  As an example, DCG points to the issue of whether Checkpoint copied DCG's products
16 and whether DCG is entitled to an injunction.

17      The court is not persuaded by DCG's argument for at least two reasons.  First, although
18 the undersigned will not presume to know whether Chief Judge Rader or any of the esteemed
19 members of the subcommittee were focused exclusively on reducing discovery costs in so-called
20 "NPE" cases, there is nothing in the language of the Chief Judge's speech or the text of the model
21 order so limiting its application.  Second, and more fundamentally, there is no reason to believe
22 that competitor cases present less compelling circumstances in which to impose reasonable
23 restrictions on the timing and scope of email discovery.  To the extent DCG faces unique or
24 particularly undue constraints as a result of the limitations, it remains free, under the Model
25 Order, to seek relief from the court.  But in general copying and the availability of an injunction
26 are issues that are impacted by such restrictions no more than the myriad of other issues (e.g.,
27 inducement, state of the art, willfulness) that are present in just about all patent cases.  And if
28 competitor cases such as this lack the asymmetrical production burden often found in NPE cases,

1  so that two parties might benefit from production restrictions, the Model Order would seem more
2  appropriate, not less.
3       Perhaps the restrictions of the Model Order will prove undue. In that case, the court is
4  more than willing to entertain a request to modify the limits. But only through experimentation
5  of at least the modest sort urged by the Chief Judge will courts and parties come to better
6  understand what steps might be taken to address what has to date been a largely unchecked
7  problem.
8       **IT IS SO ORDERED**.
9  Dated:    November 2, 2011

                        PAUL S. GREWAL
                        United States Magistrate Judge