UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DCG SYSTEMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHECKPOINT TECHNOLOGIES, LLC, ) <br> ) <br> Defendant. ) <br> ) | Case No.: C 11-03792 PSG <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS CLAIMS OF INDIRECT INFRINGEMENT AND GRANTING PLAINTIFF'S MOTION TO AMEND INFRINGEMENT CONTENTIONS** <br><br> **(Re: Docket Nos. 35, 53)** |

In this patent infringement suit, Defendant Checkpoint Technologies, LLC ("Checkpoint") and Plaintiff DCG Systems, Inc. ("DCG") agree that DCG's infringement contentions are not what they should be, but disagree about what to do about it. Checkpoint asks the court to dismiss DCG's indirect infringement claims because they do not provide the specificity required by Patent Local Rule 3-1(d).[1] DCG disputes this, and in particular disputes Checkpoint's claim that it had a duty to identify the specific customers committing the direct infringement underlying DCG's indirect claims. At the same time, DCG seeks to amend the contentions to add claims addressing

---

[1] To the extent that in its reply Checkpoint further requests dismissal of DCG's direct infringement claims based on testing, the request is denied. This type of request should not be raised for the first time in a reply brief.

1

Case No.: C 11-3792 PSG
ORDER

functionality revealed by Checkpoint's previously undisclosed product manuals.[2] The parties appeared for hearings on January 31, 2012 and March 20, 2012. Having reviewed the papers and considered the arguments of counsel,

IT IS HEREBY ORDERED that Checkpoint's motion to dismiss claims of indirect infringement is DENIED and DCG's motion for leave to amend is GRANTED.

## I. BACKGROUND

DCG presently accuses Checkpoint of infringing fifty-seven claims of seven patents.[3] DCG alleges that Checkpoint is liable for both induced and contributory infringement under Sections 271(b) and 271(c) of Title 35. On November 4, 2011, pursuant to Patent Local Rule 3-1, DCG served its infringement contentions. No discovery responses or documents were due prior to the date the infringement contentions were served.

In its contentions of induced infringement, DCG states that:

> Checkpoint takes active steps to cause infringement with both knowledge of the Asserted Patents and the specific intent to cause Checkpoint's customers to use the Accused Products in a manner that infringes the Asserted Claims. Such steps include, among other things, advising others to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; and distributing instructions that guide users to use the Accused Products in an infringing manner.[4]

In its contentions of contributory infringement, DCG alleges that:

> Checkpoint offers to sell or sells within the United States or imports within the United States a component that constitutes a material part of the inventions defined by the Asserted Claims, knowing that such components are especially made or adapted for use in a patented apparatus or method.[5]

---

[2] DCG proposes both to drop presently-asserted claims and add four new claims: claim 8 of U.S. Patent No. 7,466,852 ("the '852 Patent"); claims 13 and 20 of U.S. Patent No. 7,639,025 ("the '025 Patent"); and claim 28 of U.S. Patent No. 7,733,100 ("the '100 Patent"). Understandably, Checkpoint does not oppose the part of DCG's request that would drop claims.

[3] *See* Docket No. 36 (Ritchey Decl.) Exh. 1 at 1-2; Docket No. 40 (Sapoznikow Decl.) Exh. A.

[4] *Id.* at 2:19-24.

[5] *Id.* at 3:10-13.

2

Case No.: C 11-3792 PSG
ORDER


DCG also identifies examples of other devices that are not necessarily provided by Checkpoint, but may be used in in conjunction with the accused products in a manner that infringes the asserted claims.[6] These examples include: automated testing equipment, a cooling system, a computer, and a spectrum analyzer.[7]

On December 19, 2011, Checkpoint produced user manuals for the accused products. The user manuals are not available on Checkpoint's website, and are not otherwise publicly available.[8]

## II. DISCUSSION

The Patent Local Rules of this District provide for a "streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in its absence."[9] These rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."[10] They "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."[11]

---

[6] *Id.* at 3:3-5, 3:21-22.

[7] *Id.* at 2:26-3:2, 3:17-20. *See also* Richey Decl. Exh. 1 at Ex. A at 1 ("The Checkpoint 300-Series Products are designed to be used in conjunction with an automated test equipment (ATE). The ATE is connected with the device under test (DUT). Checkpoint provides instructions for and otherwise assists its customers in integrating ATEs with the Checkpoint 300-Series Products.").

[8] *See* Sapoznikow Decl. ¶ 4.

[9] *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06770 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)).

[10] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998).

[11] *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp.2d 558, 560 (E.D. Tex. 2005); *cf. Network Caching Tech.*, 2002 WL 32126128 at *5 (noting that the infringement contention requirement of Patent Local Rule 3-1 are designed to "facilitate discovery").

The requirements for disclosure of a patentee's infringement theories are set forth in Patent Local Rule 3-1. Specifically, Rule 3-1(d) requires a party claiming indirect patent infringement to identify:

> [a]ny direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

These rules do not, as is sometimes misunderstood, "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."[12] But a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it.[13]

Checkpoint complains that the indirect infringement claims within DCG's infringement contentions do not provide the specificity required by Patent Local Rule 3-1(d).[14] According to Checkpoint, under Rule 3-1(d), DCG is obligated on a claim by claim basis to do more than simply repeat the sort of generic allegations that DCG made in its complaint. Checkpoint specifically contends that DCG must identify both the direct infringers and their acts of direct infringement.[15] Checkpoint seeks to dismiss the indirect infringement claims under Fed. R. Civ. P. 16(f) and

---

[12] *Whipstock Service, Inc. v. Schlumberger Oilfied Sers.*, No. 6:09-cv-113, 2010 WL 143720 (E.D. Tex. Jan. 8, 2010), at *1.

[13] *Cf. FusionArc*, at *1 (denying motion to strike infringement contentions where "the record demonstrates that [patentee] FusionArc's [infringement contentions] reasonably disclose all of the information it presently possesses"). Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide "pinpoint citations" to the code identifying the location of each limitation. *See Big Baboon Corp. v. Dell, Inc.,* 723 F.Supp.2d 1224, 1228 (C.D. Cal. 2010). In at least one instance, this court has gone further, holding that even when no source code has been made available by the defendant, "reverse engineering or its equivalent" may be required for at least one of the accused products to identify where each limitation of each claim is located. *Network Caching, LLC v. Novell, Inc.,* No. C 01-2079 VRW, 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13, 2002).

[14] *See* Docket No. 35.

[15] *See id.*

37(b)(2)(A)(v), which allow the court to dismiss the action in whole or in part for failure to obey a scheduling order or pretrial order.[16]

Because the disputed contentions disclose information sufficient for Checkpoint to determine DCG's theories of infringement, dismissing DCG's indirect infringement claim is unwarranted at this point. The contentions identify a specific product line, the Checkpoint 300-Series, and thus provide Checkpoint with notice that Checkpoint indirectly infringes the Asserted Patents when a 300-Series product is integrated by a customer with, for example, an automated test system. While the contentions do not identify which specific customers perform this integration, Checkpoint has identified no case requiring a disclosure under Rule 3-1(d) of the specific third party committing any underlying act of direct infringement.[17]

Turning to DCG's request to add asserted claims, DCG contends that the previously undisclosed user manuals teach that Checkpoint infringes four additional claims that were not previously asserted. Three of these claims relate to the placement or landing of a solid immersion lens ("SIL") on an integrated circuit. The fourth previously unasserted claim relates to the intensity of reflected light to measure the power of reflection. DCG represents that until the disclosure of the manuals it was unaware that Checkpoint products included components to improve the landing of the SIL or that they utilized the intensity of the modulated signal to measure the total radiation power received. DCG further represents that it provided Checkpoint with its proposed amendments approximately five weeks after Checkpoint produced the manuals.

---

[16] Fed. R. Civ. P. 16(f). *See also Genentech, Inc. v. Amgen, Inc.,* 289 F.3d 761, 774 (Fed. Cir. 2001).

[17] In at least two cases, the Federal Circuit has suggested that an identification of specific direct infringers is not required to prevail on indirect infringement claims. *See Metabolite Labs, Inc. v. Lab Corp.,* 370 F.3d 1354, 1364-65 (Fed. Cir. 2005); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 (Fed. Cir. 1986). Whether that would be true in this case remains an issue for perhaps another day.

5

Case No.: C 11-3792 PSG
ORDER

Checkpoint responds that leave to amend infringement contentions should not be liberally granted[18] and that DCG bears the burden of establishing its diligence.[19] Checkpoint challenges DCG's diligence by pointing out that DCG could have tested the accused products, or at the very least obtained the user manuals for the accused products before serving its infringement contentions but chose not to. Checkpoint also argues that DCG never asked Checkpoint to examine the user manuals either before filing suit or before bringing its original infringement contentions, and therefore did not act diligently. Checkpoint finally notes that, even if the court believes that DCG was sufficiently diligent in seeking to amend its infringement contentions, it would suffer prejudice if DCG were allowed to amend.

"[J]udges in this district have recognized that the Patent Local Rules are not a straitjacket into which litigants are locked from the moment their contentions are served. There is a modest degree of flexibility, at least near the outset."[20] Patent L.R. 3-6 provides that amendment of the infringement contentions "may be made only by order of the Court upon a timely showing of good cause." A "non-exhaustive" example of circumstances that may support a finding of good cause is the "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions."[21] In addition, the amendment must not unduly prejudice the non-moving party.[22] Thus, a two-step analysis is required to determine if good cause exists: first, the court must determine whether the

---

[18] *See, e.g.*, *Genentech, Inc.*, 289 F.3d at 774 ("[u]nlike the liberal policy for amending pleadings, the philosophy behind amending claim charts . . . is decidedly conservative and designed to prevent the 'shifting sands' approach to claim construction").

[19] *See O2 Micro*, 467 F.3d at 1366-67.

[20] *Halo Elecs., Inc. v. Bel Fuse Inc.,* No. C07–06222 RMW (HRL), 2010 WL 3489593, at * 1 (N.D.Cal. Sep. 3, 2010).

[21] Patent L.R. 3-6(c).

[22] *See* Patent L.R. 3-6.

6

Case No.: C 11-3792 PSG
ORDER

moving party was diligent in amending its contentions; second the court must determine whether the non-moving party would suffer undue prejudice if the motion to amend were granted.[23]

Although a close call, the court is persuaded that DCG should be permitted its proposed amendment. Checkpoint cites several cases in support of its assertion that leave to amend is frequently denied for failure to show diligence.[24] However, in the bulk of these cases leave to amend was denied because the patentee either unreasonably delayed amending the infringement contentions – five months to one year – or there were errors or omissions that patentee's counsel admitted was his own oversight. Here, the manuals giving rise to the proposed amendment were not publicly available, DCG tendered its proposed amendments a few weeks after it received them, and Checkpoint cites no case supporting its assertion that DCG was required to demand the user manuals from Checkpoint beforehand.[25] Fact discovery does not conclude for a number of months.[26] While an amendment may force Checkpoint to research further the prior art, amend its invalidity contentions, and perhaps supplement its claim construction briefing that is due shortly, DCG is no position to object to appropriate accommodations in the pretrial schedule that might be

---

[23] *See Barco N.V. v. Tech. Properties Ltd.*, 5:08-CV-05398 JF/HRL, 2011 WL 3957390 at *1 (N.D. Cal. Sept. 7, 2011).

[24] *See, e.g., Sun Microsystems, Inc. v. Network Appliance, Inc.*, C-07-05488 EDL, 2009 WL 508448 (N.D. Cal. Feb. 27, 2009); *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, C05-03117 MJJ, 2007 WL 2221029 (N.D. Cal. July 20, 2007); *Berger v. Rossignol Ski Co., Inc.*, C 09-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006).

[25] Citing *Refac Int'l Ltd. v. Hitachi Ltd*, 141 F.R.D. 281 (C.D. Cal. 1991), Checkpoint further questions whether DCG met its burden under Fed. R. Civ. P. 11 by failing to test the products or secure the manuals before filing the suit. Whether DCG complied with its Rule 11 obligations, however, should have been raised in a separate motion. *See Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*, C09-05897 RS HRL, 2011 WL 940263 at *3 n.1 (N.D. Cal. Feb. 18, 2011).

[26] *See* Docket No. 31.

7

Case No.: C 11-3792 PSG
ORDER

required.[27] In sum, the court finds that Checkpoint has good cause to amend its invalidity contentions and does not believe that Checkpoint will be unduly prejudiced.

### III. CONCLUSION

No later than April 27, 2012, DCG may supplement its infringement contentions as it has requested and in doing so shall any provide information regarding direct infringement by Checkpoint's customers in its possession. All other relief requested by the parties' motions is denied.

**IT IS SO ORDERED**.

Dated: 4/16/2012

PAUL S. GREWAL
United States Magistrate Judge

---

[27] The court also notes that in light of this opportunity to amend, DCG should also provide any further information it now has in its possession about the customers its believes are infringing the asserted claims. While the court previously explained that this disclosure was not required at the time DCG originally served its contentions, this does not justify DCG withholding any information that it has come to learn.