UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DCG SYSTEMS, INC., <br><br> Plaintiff, <br> v. <br> CHECKPOINT TECHNOLOGIES, LLC., <br><br> Defendant. | Case No.: C 11-03792 PSG <br><br> **ORDER GRANTING PARTIES' JOINT MOTION FOR CLARIFICATION OF E-DISCOVERY ORDER** <br><br> **(Re: Docket No. 103)** |

In this patent infringement suit, the court entered an e-discovery order on November 2, 2011 governing the production of email.[1] The parties now dispute whether Plaintiff DCG Systems, Inc. ("DCG") has complied with certain provisions of the e-discovery order and seek further clarification of them. On August 7, 2012, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel,

IT IS HEREBY ORDERED that the parties' joint motion for clarification is GRANTED.

The e-discovery order provides that the parties may propound email production requests for "specific issues, rather than general discovery of a product or business."[2] The requesting party

---

[1] *See* Docket Nos. 32 and 33.

[2] *See* Docket No. 33 at ¶ 7.

1

Case No.: C 11-3792 PSG
ORDER

must limit the requests to ten custodians and a total of twenty search terms per custodian per party.[3] The parties dispute: (1) whether DCG's first set of email requests seeks general discovery of a product or business as opposed to discovery related to specific issues; and (2) whether DCG has properly calculated the number of search terms per custodian.

DCG contends that its first set of email requests conforms with both requirements. They are tailored to specific issues, rather than general discovery, and seek email discovery from eight of Defendant Checkpoint Technologies, LLC's ("Checkpoint") custodians with an average of 14.75 search terms per custodian. By way of example, DCG seeks email regarding:

- Checkpoint's knowledge of DCG's patents and DCG's proprietary technologies;

- Whether Checkpoint copied the technologies claimed in the asserted patents, either on its own or at the direction of one or more Checkpoint customers;

- Indirect infringement, including Checkpoint's instructions to its customers relating to the accused products and functionalities;

- The nature of the market for the accused Checkpoint products and for other devices that practice the asserted patents;

- The value of the inventions claimed in the asserted patents, as a function of the overall value of the accused Checkpoint products and other devices that practice the asserted patents;

- Statements of praise for the claimed inventions, or of skepticism, or demonstrating a long-felt need, or other statements relevant to secondary considerations of non-obviousness; and

- Evidence of alleged non-infringing alternatives to practicing the claimed inventions.

As for the second issue, nearly all of DCG's email search requests are framed as primary search terms coupled with several narrowing search criteria. For example, one proposed search term is:

> (Intel) AND (SIL OR "solid immersion lens" OR LVI OR "laser voltage imaging" OR LTM OT "laser timing module" OR "modulation mapping" OR cool OR "conduction convection" OR c3 OR Thermostream OR ATE OR "automatic test" OR quote OR quotation OR nozzle OR "thermal management" OR tester OR specification OR requirement OR prefer OR need OR demand OR request OR emiscope OR ruby meridian OR waferscan)

---

[3] *See id.* at ¶¶ 10-11.

2

Case No.: C 11-3792 PSG
ORDER

1  This constitutes a single search term because it is a conjunctive combination of "Intel" and others,
2  just as the e-discovery order permits. This approach is consistent with the order's purpose of
3  promoting efficiency and reduce costs. As a final point, Checkpoint has failed to demonstrate any
4  burden whatsoever in conducting the searches because it refuses to report even the number of
5  preliminary search results for each search.

6  Checkpoint responds that DCG's email search requests do seek general discovery and are
7  not directed to specific issues in the case. While DCG states that its email requests relate to issues
8  of willfulness, copying, inducement, market definition, secondary considerations of non-
9  obviousness and non-infringing alternatives, they ultimately address features of the accused
10 products and general discovery into Checkpoint's products and business that the order prohibits.
11 Referring to the search terms tendered generally and to the particular Intel example above,
12 immediately following "AND," the string of narrowing search terms connected by "OR" plainly
13 requires disjunctive and separate searches. Checkpoint has offered a revised set of Boolean
14 searches that could serve as a guide to what Checkpoint is willing to accept relating to search
15 terms. It should not, however, have to give DCG carte blanche to submit thousands of searches
16 regarding issues that DCG deems relevant to in the case.

17 The court agrees with DCG that the issues it identifies above are specific enough. The point
18 of limiting email searches to specific issues is to avoid general trolling for documents unlikely to
19 yield useful information on a particular issue in dispute. Although the issues are admittedly broad,
20 DCG has sufficiently avoided the general product or business requests prohibited under the order.
21 As for the search term dispute, the use of search terms that are both conjunctive and disjunctive
22 illustrates that the Federal Circuit's Model Protective Order, with its guidance as to simple
23 conjunctive or disjunctive searches, was offered only as the beginning of a much longer
24 conversation in the case law about how to properly scope custodial email search collection and
25 production. Rather than applying mechanical counting rules that perhaps only George Boole might
26 appreciate, the right way to resolve such a dispute is to consider the yield against the purported
27 need. In the absence of any yield data from Checkpoint, however, the court is not in a position to
28 make this consideration, let alone deny discovery that is otherwise appropriate under Rule 26. The

3
Case No.: C 11-3792 PSG
ORDER

1   court must therefore agree with DCG that such terms as it has proposed may be used, and leave the

2   questions of term counting and yield/need balances for another day.

3   **IT IS SO ORDERED.**

4   Dated:   8/20/2012

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: C 11-3792 PSG
ORDER